THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONNIE A. BRADFORD, Defendant-Appellant.

Fourth District    No. 4—92—0416

Opinion filed January 21, 1993.

Daniel D. Yuhas and Susan E. Alesia, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Following a jury trial conducted in the circuit court of McLean County, defendant Ronnie A. Bradford was found guilty of unlawfully possessing less than 15 grams of a substance containing cocaine and unlawfully possessing with the intent to deliver more than one gram but less than 15 grams of a substance containing cocaine, both offenses occurring on August 11, 1991. (Ill. Rev. Stat. 1989, ch. 56½, pars. 1402(b), 1401(b)(2).) Defendant was sentenced to serve a term of imprisonment of 15 years for possession with the intent to deliver.

On appeal, defendant raises the following issues: (1) whether the trial court's refusal to suppress as evidence cocaine and other items found in a coin purse in the trunk of a car driven by him at the time of his arrest, which discovery was made pursuant to a legitimate inventory search of the vehicle, was manifestly erroneous; (2) whether the trial court's evidentiary rulings regarding evidence that the cocaine belonged to a person named Felicia Myrick, including the refusal to allow into evidence Myrick's inculpatory statement and evidence of her disappearance, constituted an abuse of discretion and deprived him of an opportunity to present his defense; and (3) whether he was not proved guilty of possession with intent to deliver beyond a reasonable doubt since only a small amount of cocaine was found and that amount did not support an inference of an intent to deliver. We affirm.

The first issue to be considered concerns the refusal to suppress the evidence. The cocaine was discovered as a result of an inventory search. The defendant does not challenge the legality of the inventory search in general, but focuses on the propriety of the officer opening a coin purse discovered in the trunk of the car in order to inventory the items in the purse. It is not argued by defendant that the inventory search was a ruse to discover incriminating evidence.

The coin purse would be expected to contain money or other items of value. Among the purposes for an inventory search are to protect the owner's property and to protect the police from false claims of lost or stolen property. (*People v. Clark* (1976), 65 Ill. 2d 169, 174, 357 N.E.2d 798, 800.) In light of the nature of the search and the characteristics of the coin purse, the police officer in this case acted properly in opening the purse and inventorying its contents. (*Florida v. Wells* (1990), 495 U.S. 1, 4, 109 L. Ed. 2d 1, 6, 110 S. Ct. 1632, 1635; *Colorado v. Bertine* (1987), 479 U.S. 367, 372-75, 93 L. Ed. 2d 739, 746-48, 107 S. Ct. 738, 741-43.) At the hearing on the motion to suppress, McLean County deputy sheriff Vickie Schaefer testi-

fied she conducted the inventory search pursuant to departmental regulations and training which require that all containers in which valuables could be contained are opened and the contents are inventoried. According to Schaefer, this is done in every inventory search. When she discovered the coin purse, Schaefer shook the purse to determine if there was money or other items of value in it. It rattled, so she proceeded to open it to determine if it contained anything of value. Since it can be inferred from this testimony that the purse was not a locked container, but could be easily opened, it was proper for Schaefer to open it and inventory its contents in order to protect the owner's property and to protect herself and other officers from false accusations of theft or claims of missing property.

The burden of proving the unlawfulness of a search and seizure at a hearing on a motion to suppress rests on the defendant, and the reviewing court will not disturb the trial court's ruling on the motion to suppress unless that ruling is contrary to the manifest weight of the evidence. (*People v. Janis* (1990), 139 Ill. 2d 300, 308, 565 N.E.2d 633, 637.) The trial court's denial of the motion to suppress in this case is not against the manifest weight of the evidence.

■ The next issue addressed is whether the evidence presented was sufficient to prove defendant guilty beyond a reasonable doubt. The elements of the offense which must be proved are (1) that the defendant knew of the presence of the controlled substance, (2) that the controlled substance was within the immediate control or possession of defendant, and (3) defendant had the intent to deliver the controlled substance. (*People v. Newman* (1991), 211 Ill. App. 3d 1087, 1093, 569 N.E.2d 1089, 1092-93.) The only element of the offense which defendant challenges as not having been proved beyond a reasonable doubt is the intent to deliver. Defendant suggests the small quantity of cocaine found in the trunk of his car did not support an inference of intent to deliver. It was stipulated that the officer found 1.3 grams of off-white chunks, 1.1 grams of which a forensic scientist analyzed and found to be cocaine.

As a matter of public policy, the possession of as little as one gram of a substance containing cocaine will support a conviction for the possession of cocaine with the intent to deliver. (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(b)(2).) Furthermore, the amount of cocaine is not the sole evidentiary basis for inferring intent to deliver. The manner in which the controlled substance is kept or packaged and the presence of drug trafficking paraphernalia can also support such an inference. *People v. McDonald* (1992), 227 Ill. App. 3d 92, 99-100, 590

N.E.2d 1003, 1009; *People v. Romero* (1989), 189 Ill. App. 3d 749, 756, 546 N.E.2d 7, 11.

In the passenger compartment of the automobile, Schaefer found a cellular telephone and a programmable scanner. She testified such scanners are set to radio frequencies to allow persons to listen to radio transmissions. Schaefer determined the scanner was set to the radio frequency used by the Bloomington, Illinois, police department and may also have been set to the frequency used by the Normal, Illinois, police department. In the trunk, she found three clear ziplock baggies, probably 2½ inches by 1½ inches in size, which contained smaller, yellow ziplock baggies estimated to be one-half inch by three-quarters inch in size. Based on her experience and training, the little yellow ziplock bags are used to distribute crack and she described them as "crack bags." She did not count the little yellow bags, but described the quantity as "more than usual." Inside the coin purse were 8 to 10 small little yellow baggies, each containing crack, or rock cocaine.

Detective Michael Essig of the McLean County sheriff's department also testified these baggies are normally used to package crack cocaine. In addition, he testified about defendant's knowledge of drug trafficking between Peoria and Bloomington, Illinois. Defendant offered that, if Essig helped him to get out of jail, defendant would be able to "do a number of people who were delivering crack cocaine to the projects in Bloomington." Defendant informed Essig of the identity of one of the main sources of crack cocaine in Bloomington and further informed Essig that black, female juveniles were used to transport crack between Peoria and Bloomington.

The Illinois Supreme Court has recently stated the following:

"It is the jury's function to determine the accused's guilt or innocence, and this court will not reverse a conviction unless the evidence is so improbable as to justify a reasonable doubt of defendant's guilt. (*People v. Eyler* (1989), 133 Ill. 2d 173, 191.) '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; see also *People v. Collins* (1985), 106 Ill. 2d 237, 261.) In addition, it is for the jury to weigh the credibility of the witnesses and to resolve conflicts or inconsistencies in their testimony. (*People v. Phillips* (1989), 127 Ill. 2d

499, 514.)" *(People v. Frieberg* (1992), 147 Ill. 2d 326, 359-60, 589 N.E.2d 508, 524.)

In light of defendant's knowledge of drug trafficking, the prepackaged crack cocaine located in the car he was driving, and the presence of other paraphernalia used by traffickers, there was sufficient evidence from which the jury could infer an intent to deliver on the part of defendant and to support a finding of guilt beyond a reasonable doubt.

■ Finally, we consider the issue of whether defendant was denied an opportunity to present a defense and the related evidentiary questions.

> "A defendant may prove any fact or circumstance tending to show that the crime was committed by a person other than himself, but that right is not without limitations. *(People v. Nitti* (1924), 312 Ill. 73, 90, 143 N.E. 448, 454; *People v. Enis* (1990), 139 Ill. 2d 264, 281, 564 N.E.2d 1155, 1161.) A trial court may reject offered evidence on grounds of irrelevancy if it has little probative value due to its remoteness, uncertainty, or if it is speculative in nature. *(Enis*, 139 Ill. 2d at 281, 564 N.E.2d at 1161; *People v. Howard* (1991), 147 Ill. 2d 103, 143, 588 N.E.2d 1044, 1060.)" *(People v. Whalen* (1992), 238 Ill. App. 3d 994, 1003.)

Of course, the evidence tendered in support of such a defense must also comply with other rules of evidence.

In this case, defendant was not denied the opportunity to present the defense that Myrick owned the coin purse and placed it in the vehicle unbeknownst to defendant. Terry Beverly testified that around 1 a.m. he had been in the car with Bradford when a young lady named Felicia approached. Bradford opened the trunk, and Felicia placed "a white bag and a brown Gucci purse" in the trunk. Tarell Johnson testified he knew Felicia Myrick by the name of Felicia Jones, and that he had seen her put some clothes and "a little black pouch with a keychain on it" in the trunk of the car. This occurred about 5 p.m. in the presence of about five other witnesses. Robert Armstrong testified that the coin purse found by Schaefer was just like a purse he knew belonged to Myrick and that it could have been hers. Lorilene Bailey testified she had driven Bradford to Bloomington, where she saw Myrick with the coin purse. Defendant testified that he knew Myrick by the name of Felicia Jones. He stated she had put "her clothes and stuff" in the trunk of the car while he "was drinking and horsing around." Bradford also identified the coin purse discovered by Schaefer as belonging to Myrick. In closing argument, defendant's

counsel argued vigorously and repeatedly that the State presented no evidence that defendant owned the coin purse which contained the cocaine, no evidence that he knew what it contained, and no evidence that he was knowingly transporting it for someone else. Defense counsel repeatedly reminded the jury that testimony, not only by defendant, but also by other witnesses, showed the coin purse, along with other personal items found in the trunk, belonged to Myrick and that she had placed them in the trunk herself.

Nevertheless, defendant complains that there were items of evidence and testimony which the trial court did not allow the jury to consider.

> "The admissibility of evidence at trial is a matter within the sound discretion of the trial court, and that court's decision may not be overturned on appeal absent a clear abuse of discretion. (*People v. Franklin* (1990), 135 Ill. 2d 78, 96; *People v. Brown* (1990), 199 Ill. App. 3d 860; *People v. Kimbrough* (1985), 138 Ill. App. 3d 481.) Such an abuse of discretion will be found only where the trial court's decision is ' "arbitrary, fanciful or unreasonable" ' or ' "where no reasonable man would take the view adopted by the trial court." ' (*People v. M.D.* (1984), 101 Ill. 2d 73, 90, quoting *Peek v. United States* (9th Cir. 1963), 321 F.2d 934, 942.)" *People v. Illgen* (1991), 145 Ill. 2d 353, 364, 583 N.E.2d 515, 519.

The defendant contends that the trial court improperly refused to allow him to present as evidence an unsworn, signed, notarized, typewritten, out-of-court statement ostensibly made by Myrick to the effect that the cocaine was hers, was not the property of defendant, and that she placed it into the trunk of the car without notifying defendant of having done so. Clearly this is an out-of-court statement offered for the purpose of establishing the truth of the matters asserted therein, relying for its value on the credibility of Myrick, the out-of-court asserter. (*People v. Rogers* (1980), 81 Ill. 2d 571, 577, 411 N.E.2d 223, 226.) As such, the statement is inadmissible hearsay, unless it is shown to fit within an exception to the rule against hearsay. Since defendant does not argue that the statement fits an exception to the rule against hearsay, we find the trial court did not commit an abuse of discretion in refusing to allow into evidence the statement or any testimony by any witness with regard to the statement's authenticity.

Moreover, there are considerable concerns about the reliability of this statement.

"Generally an extrajudicial declaration not under oath, by the declarant, that he, and not the defendant on trial, committed the crime is inadmissible as hearsay though the declaration is against the declarant's penal interest. (*People v. Tate* (1981), 87 Ill. 2d 134, 143; *People v. Craven* (1973), 54 Ill. 2d 419, 427, citing *People v. Lettrick* (1952), 413 Ill. 172, 178.) Such declarations may, however, be admitted where justice requires. (*People v. Lettrick* (1952), 413 Ill. 172, 178.) The Supreme Court of the United States, and this court as well, have held that where there are sufficient indicia of trustworthiness of such extrajudicial statements, a declaration may be admissible under the statement-against-penal-interest exception to the hearsay rule. (*Chambers v. Mississippi* (1973), 410 U.S. 284, 302, 35 L. Ed. 2d 297, 313, 93 S. Ct. 1038, 1049; *People v. Tate* (1981), 87 Ill. 2d 134, 143-44; *People v. Craven* (1973), 54 Ill. 2d 419, 429.) In *Chambers*, the court, in holding a declaration admissible, stated that there were sufficient indicia of trustworthiness in that (1) the statement was made spontaneously to a close acquaintance shortly after the crime occurred; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and against the declarant's interest; and (4) there was adequate opportunity for cross-examination of the declarant. *Chambers v. Mississippi* (1973), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 311-12, 93 S. Ct. 1038, 1048-49.

\*\*\*

\*\*\* The question to be considered in judging the admissibility of a declaration of this character is whether the declaration was made under circumstances that provide 'considerable assurance' of its reliability by objective indicia of trustworthiness. *Chambers v. Mississippi* (1973), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 311-12, 93 S. Ct. 1038, 1048-49; *People v. Tate* (1981), 87 Ill. 2d 134, 144." *People v. Bowel* (1986), 111 Ill. 2d 58, 66-67, 488 N.E.2d 995, 999-1000.

The statement was neither spontaneous nor made shortly after the crime occurred. The incident which formed the basis of the charges against defendant occurred on August 11, 1991, but the purported confession was not signed and notarized until September 17, 1991. According to the offers of proof presented by defendant, Dorothy McCollum, defendant's mother, went to Myrick's house where she observed the typed, but unsigned, statement. She never saw Myrick sign it and picked up the signed statement the following day. Brenda Douglas, defendant's girlfriend, testified she met with

Myrick on September 17, 1991, to have Myrick sign a statement to the effect that the cocaine was not defendant's and this was done for the purpose of helping defendant. In addition, there were two other handwritten statements purportedly signed by Myrick on September 17, 1991. One was a statement that the cocaine did not belong to Myrick although the statement also includes a section that the cocaine did not belong to defendant either. This handwritten statement read as follows:

> "I Felicia Myrick understand that these things (clothes) are my belongings not the rock cocaine that does not belong to me[.] I will appear in court if I have to to state that rock cocaine is not mine and does not belong to me. And it does not belong to Ronnie Bradford."

A second handwritten statement contained several blacked-out areas which would correspond to the denials of involvement by Myrick in the other handwritten note, and this second note read as follows, with asterisks inserted where the blacked-out areas occurred.

> "I Felicia Myrick understand that those things (clothes) *** are my belongings *** rock cocaine that does *** belong to me[.] I will appear in court if I have to to state that the rock cocaine is *** mine and does *** belong to me. And it does not belong to Ronnie Bradford."

Dennis Burk, who notarized this note, testified the blacking out of portions had occurred since he notarized it. Moreover, the two notaries whose testimony was offered, Burk and Lester Presley, would only testify that a person carrying papers identifying herself as Felicia Myrick or who may have generally resembled her signed the statements they notarized.

The statement inculpating Myrick was not corroborated by the evidence, and in fact there was an indication she tried to deny that the cocaine belonged to her. Given the potential for drug dealers asserting influence on persons through intimidation and bribery, the nature of the making of this statement warrants a healthy suspicion concerning the reliability of the purported inculpatory statement by Myrick. Although in each of these statements Myrick purportedly stated the cocaine was not defendant's, the basis for her knowing that is not established because she variously denies and admits being the owner of the cocaine. In addition, Myrick was not available for cross-examination. No abuse of discretion occurred in refusing to admit this statement and the testimony relating thereto into evidence.

■ The second evidentiary matter on which the defendant claims the trial court erred was evidence concerning the fact that defend-

ant's mother, girlfriend, and a private process server hired by these women attempted to locate Myrick and could not do so. In another offer of proof, Myrick's former boyfriend testified he had not seen her for about six months. Defendant fails to demonstrate how this evidence is relevant. Evidence is relevant if it tends to make more probable the existence of a fact that is of consequence to the determination of the action. (*People v. Monroe* (1977), 66 Ill. 2d 317, 321-22, 362 N.E.2d 295, 297.) There is no evidence offered which suggests Myrick fled to avoid prosecution. Her absence from the area could be totally unrelated to this case, and any contrary conclusion is pure speculation. As a result, we do not agree with defendant that the fact these people could not locate Myrick is a fact which tends to prove Myrick's guilt and defendant's innocence or in any way provides "credibility" to defendant's version of the events. Nor did it destroy the believability of defendant's version as the jury was free to think that Myrick did not appear in court to testify so as to avoid admitting her guilt.

Defendant also complains that, had Myrick been present to testify, his efforts to get her signed inculpatory statement admitted would have been facilitated. The trial court was not asked to issue a subpoena to compel Myrick's appearance in court, and defendant had the responsibility to call his witness to testify at trial. (See *People v. Murray* (1990), 201 Ill. App. 3d 573, 579, 559 N.E.2d 174, 177.) The trial court did not commit an abuse of discretion by refusing to allow witnesses to testify about Myrick's absence, the relevance of which had not been established.

For the foregoing reasons, the judgment of the circuit court of McLean County is affirmed.

Affirmed.

KNECHT and COOK, JJ., concur.