THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MARK ANTHONY McCOY, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL STRAIGHT, Defendant-Appellee.

Fourth District   Nos. 4—94—0497, 4—94—0498 cons.

Opinion filed February 23, 1995.

588

COOK, J., specially concurring.

Appeal from the Circuit Court of Ford County; the Hon. William M. Roberts, Judge, presiding.

Tony Lee, State's Attorney, of Paxton (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

John J. Armellino, of Chicago, for appellee Mark Anthony McCoy.

No brief filed for appellee Michael Straight.

JUSTICE LUND delivered the opinion of the court:

We have consolidated these appeals by the State pursuant to Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)) from orders of the circuit court of Ford County, granting the motions of defendants Mark Anthony McCoy and Michael Straight to suppress evidence.

Defendants were charged with unlawful possession of 15 grams or more, but less than 100 grams, of a controlled substance (cocaine) (720 ILCS 570/402(a)(2)(A) (West 1992)), unlawful use of weapons (720 ILCS 5/24—1 (West 1992)), and unlawful possession of cannabis (720 ILCS 550/4(a) (West 1992)). Their arrests came on January 24, 1994, when Straight was stopped for speeding on Interstate 57. McCoy and codefendant Willie Davis were passengers in the vehicle, a rental car. Straight's motion to suppress evidence alleged that the vehicle was searched without his consent and without probable cause, resulting in the seizure of items the State intended to introduce as evidence against him. The search was allegedly an inventory search conducted by the officer, pursuant to established police procedures, and involved

both the passenger area of the vehicle and the engine compartment. The motion alleged that the vehicle was not impounded at the time of the search and that Straight, as driver of the vehicle, had either a proprietary interest in the vehicle or a reasonable expectation of privacy. McCoy's motion alleged that he was a passenger in the vehicle and that the search was without probable cause.

Illinois State Trooper William Newman had stopped the vehicle containing defendants and Davis because it was going 97 miles per hour in a 65-mile-per-hour zone. When Newman signaled Straight to pull the vehicle over, he pulled it over to the left side of the highway onto the median. A computer check revealed no driver's license had been issued to Straight. McCoy, who had been the front seat passenger, and Davis, who was sitting in the backseat, stated they had no valid driver's licenses. Newman determined from a computer check that the vehicle was registered to a leasing company in Elmhurst; there was no rental paperwork in the vehicle. Straight told Newman that McCoy had picked Davis and him up in the vehicle at their homes in Chicago. He stated he was on his way to Rantoul to enroll in Parkland College. According to Straight, McCoy had acquired the vehicle from his "kinfolk." However, McCoy told Newman later at the jail that he had picked Straight and Davis up in his own Cadillac. Newman issued Straight various traffic warnings and citations. He then called for backup and for a tow truck, since none of the vehicle's occupants could legally drive it. When his backup arrived, he commenced an inventory search of the vehicle. He found a flip-top cigarette box in the backseat. He opened the box and found marijuana cigarettes. Davis admitted they belonged to him. Newman opened the console between the two front seats and discovered another marijuana cigarette. Newman was unable to determine to whom that cigarette belonged. Because the inventory form he was using required him to determine whether the vehicle had a battery, he opened the engine compartment and, near the battery, found a weapon and a bag containing a chunky white substance which appeared to be crack cocaine. A computer check on the gun revealed that it had been stolen in Chicago in December 1993.

At the suppression hearing, Newman testified that he had the vehicle towed from the highway because it presented a traffic hazard and no one could legally drive it from the scene. However, once it was off the highway and Newman had left, anyone could pay the tow bill and drive it away, even one of the occupants of the vehicle. He had no reason to suspect any criminal activity until he found the incriminating evidence. The vehicle was in Newman's control only until the tow truck driver removed it. His only purpose for the inven-

tory search was to prepare the vehicle to be removed from the highway. The three occupants stood outside the vehicle with the other officer while he completed the inventory of its contents. The inventory was conducted pursuant to standard procedure established by the Illinois State Police. The inventory form was one he had used for the six years he had been a trooper.

The trial court granted both motions to suppress. The court found McCoy had standing to contest the search because he had a possessory interest in the vehicle due to the fact he had produced the vehicle for the trip and picked up Straight and Davis in it. The court made no finding on the issue of Straight's standing. The court's orders noted the three requirements of the inventory exception to a search warrant were (1) the original impoundment of the vehicle must be lawful; (2) the purpose of the search must be to protect the owner's property, to protect the police from claims of lost, stolen or vandalized property, and to protect the officer from danger; and (3) the search must be conducted in good faith pursuant to reasonable, standardized police procedures and not as a pretext for an investigatory search. The court found that the vehicle had not been impounded at the time of the search, and that it was a fair inference from the officer's testimony that he did not take control of the vehicle until he found the contraband. Under case law, since there was no impoundment, there was no justification for the inventory. A second basis for granting the motion was that the State produced no evidence of the actual substance of the standard police policies for an inventory search which would indicate what the criteria are for impounding a vehicle, what portions of it may be inspected, and whether closed or locked containers may be opened. The State filed its certificates of impairment and appealed.

Initially, we note that Straight has not filed a brief on appeal. However, we have concluded that we are able to dispose of his appeal without the assistance of his brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495.

The burden of proving the unlawfulness of a search and seizure on a motion to suppress rests upon the defendant. (*People v. Bradford* (1993), 239 Ill. App. 3d 796, 799, 607 N.E.2d 625, 627, *appeal denied* (1993), 151 Ill. 2d 568, 616 N.E.2d 339.) A reviewing court will not disturb a trial court's ruling on a motion to suppress, unless that ruling is contrary to the manifest weight of the evidence. *People v. De-Laire (1993)*, 240 Ill. App. 3d 1012, 1027, 610 N.E.2d 1277, 1286, *appeal denied* (1993), 151 Ill. 2d 569, 616 N.E.2d 340; *Bradford*, 239 Ill. App. 3d at 799, 607 N.E.2d at 627.

The first issue we must address is whether the search and resultant seizure violated defendants' fourth amendment rights. Straight's motion alleged that he had either a proprietary interest in the vehicle or a reasonable expectation of privacy. No evidence was given at the hearing on his motion to suppress supporting this allegation, and the trial court did not address the issue in its ruling. The State argues there was no proof that Straight was legitimately in the car and that it appears he may have simply taken over driving duties for McCoy. It also argues that Straight could not have lawfully driven the vehicle, since he had no driver's license. The State also contends Straight did not establish that he had a possessory interest in the personal effects found in the vehicle, noting that he did not claim ownership of any of the marijuana cigarettes. It also reasons that the engine compartment is not an area where a driver of a rental car that had been supplied by another would ordinarily have a legitimate expectation of privacy.

In *Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421, defendants were passengers in an automobile that was searched by police. A sawed-off rifle was found under the front passenger seat, and rifle shells were found in the locked glove compartment. These were offered into evidence in defendants' trial for armed robbery. Neither defendant owned the automobile, and neither claimed ownership of the seized items. The United States Supreme Court affirmed the holding of the appellate court that the search and seizure did not violate defendants' fourth amendment rights. The relevant question is whether defendants had a legitimate expectation of privacy in the place invaded by the search or in the property seized. The Court found that defendants had not asserted a property or possessory interest in the automobile, nor had they asserted an interest in the property seized. The fact that defendants were in the automobile with the consent of the owner was not determinative of whether they had a legitimate expectation of privacy in the areas of the automobile that were searched. (*Rakas*, 439 U.S. at 148-49, 58 L. Ed. 2d at 404, 99 S. Ct. at 433.) In light of the Court's opinion in *Rakas*, defendants may no longer rely upon the automatic standing rule previously enunciated by the Court in *Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725.

■ Factors to be considered in determining whether a defendant has a legitimate expectation of privacy are (1) ownership of the property searched or seized, (2) whether the defendant was legitimately present in the area searched, (3) the defendant's possessory interest in the area or property seized and his prior use of it, (4) ability to control or exclude others' use of the property, and (5) a subjective

expectation of privacy in the property. The question whether defendant had a legitimate expectation of privacy and, thus, standing to challenge a search, must be resolved on the basis of the total circumstances of each case. *People v. Johnson* (1986), 114 Ill. 2d 170, 191-92, 499 N.E.2d 1355, 1364.

■ We conclude that Straight had no legitimate expectation of privacy in the vehicle or in the items seized and, thus, the trial court erred in granting his motion to suppress. Straight had no ownership interest in the vehicle, and the record does not indicate he ever claimed any interest in the items seized. He was driving the vehicle illegally, since he had no driver's license. Indeed, none of the three occupants of the vehicle could have legally driven it. No rental paperwork was found in the vehicle, and we note that initially McCoy denied having picked up Davis and Straight in it. Apparently, even assuming that McCoy did pick the others up in the vehicle, the evidence was that he had acquired it from his "kinfolk," and there is no showing as to what authority they gave McCoy or Straight with respect to the vehicle. Thus, there was no showing that Straight had any possessory interest in the vehicle for the relatively short drive from Chicago to Rantoul. We agree with the State that the engine compartment of a rental car would not normally be an area where one who had no possessory or ownership interest in the car would have a legitimate expectation of privacy. In addition, in light of the foregoing facts, Straight would have had no authority to control or exclude the use of the property by others. Although he may have had a subjective expectation of privacy in the areas searched or items seized in the sense that the contraband was hidden and he did not want it to be found, such an expectation is not sufficient to confer standing on a defendant to contest the search.

■ As to McCoy, we note initially the general rule is that a passenger lacks standing to challenge a search of another's car unless the passenger had a legitimate expectation of privacy in the place searched. (*People v. Sesmas* (1992), 227 Ill. App. 3d 1040, 1045, 591 N.E.2d 918, 921, *appeal denied* (1992), 146 Ill. 2d 646, 602 N.E.2d 470.) Normally, a passenger would not have a legitimate expectation of privacy in areas of a vehicle which are of no concern to him, such as the trunk, glove compartment, and area under the seat. (*Rakas*, 439 U.S. at 148-49, 58 L. Ed. 2d at 404, 99 S. Ct. at 433; *People v. Manke* (1989), 181 Ill. App. 3d 374, 378, 537 N.E.2d 13, 15.) McCoy did not allege in his motion or establish at the hearing any possessory interest in the vehicle or the items seized. In fact, McCoy could have had no valid interest in the vehicle. Although he allegedly supplied the vehicle, he could not have rented it because he was not a licensed

driver. Assuming he obtained the vehicle from some "kinfolk," it is doubtful they could have legitimately entrusted the vehicle to him as an unlicensed driver. In addition, McCoy claimed no interest in the contraband which was found. Our research has revealed no case law which would convince us that McCoy had a legitimate expectation of privacy in any area of the vehicle. This is not a case where McCoy was in the vehicle with permission of the owner for a long trip. Passengers have been found to have a legitimate expectation of privacy in certain areas of a vehicle in such circumstances. (See *People v. Taylor* (1993), 245 Ill. App. 3d 602, 611, 614 N.E.2d 1272, 1278, *appeal denied* (1993), 152 Ill. 2d 576, 622 N.E.2d 1224.) In light of our holding, we need not address the question of whether the search itself was valid.

For the reasons stated, the trial court's orders granting defendants' motions to suppress are reversed and the causes remanded for further proceedings.

Reversed and remanded with directions.

STEIGMANN, J., concurs.

JUSTICE COOK, specially concurring:

If someone leases a vehicle from a leasing company, then loans that vehicle to one of his relatives for a trip from Chicago to Rantoul, I would conclude the relative has a possessory interest in the vehicle sufficient to afford standing for a motion to suppress. The fact the relative is not licensed to drive might be relevant on the issue whether the lessee actually loaned out the vehicle, but is not relevant on the relative's possessory interest. It is possible for an unlicensed driver to possess a motor vehicle, just as it is possible for an unlicensed driver to own a motor vehicle. Even where a vehicle is operated illegally the operator may have a possessory interest in the vehicle.

*Rakas* held that a mere passenger in a car has no legitimate expectation of privacy in the glove compartment or the area under the seat. Straight here was driving the vehicle at the time of the stop, but, even viewing the facts most favorably to him, it would appear that he was simply a passenger who had taken over driving duties for McCoy. On these facts, under *Rakas*, Straight had no standing to object to a search of the engine compartment, the console, or the backseat. *Cf. Taylor*, 245 Ill. App. 3d at 611, 614 N.E.2d at 1278 (passenger on trip from Illinois to Colorado had standing).

It may have been possible for McCoy to establish standing, but he failed to do so. Straight told Newman that McCoy had acquired the

vehicle from McCoy's kinfolk and used it to pick up Straight and Davis at their homes in Chicago. McCoy told Newman, however, that he had picked up Straight and Davis in his own Cadillac. When Newman told McCoy what Straight and Davis had said, McCoy said he wanted to speak with his attorney. It is defendant's burden to establish standing. Defendant is not thereby forced to give up his fifth amendment rights; the State cannot use a defendant's admissions from a suppression hearing at trial. (*People v. Morrison* (1988), 178 Ill. App. 3d 76, 82-83, 532 N.E.2d 1077, 1081-82.) McCoy's motion to suppress failed to allege that he had any possessory interest in the vehicle, and the above evidence was insufficient to sustain his burden.