THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY BEVERLY, Defendant-Appellant.

Fourth District   No. 4—94—0878

Opinion filed March 28, 1996.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant Terry Beverly appeals his conviction after a jury trial in the circuit court of McLean County of one count of possession of less than one gram of a controlled substance containing cocaine with intent to deliver, a violation of section 401(d) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/401(d) (West 1992)). We affirm.

## I. BACKGROUND

Defendant's trial occurred in July 1994. Bloomington police officer Richard Barkes, a detective for seven or eight years, was assigned to driving-under-the-influence-of-alcohol patrol the early morning of April 15, 1994. While parked in a marked squad car in Bloomington, he saw a vehicle traveling through an alley. Barkes began to follow it. The car speeded up and almost hit a truck. The car also turned without a signal. Barkes flashed his overhead lights, and the car pulled over. Barkes could see the silhouettes of two people in the car.

Defendant exited from the driver's side of the car before Barkes had a chance to call in his report. Barkes ordered defendant to stay in front of the police car. Instead, defendant kept moving from side to side with his hands behind his back. Defendant never turned his back to Barkes. Barkes again ordered defendant to stay in front of the police car, but defendant walked around to the passenger side of the police car, almost to the passenger door. Barkes got out of the squad car, approached defendant, grabbed his arm and brought him to the front of the police car. He had him put his hands on the police car and handcuffed him.

Barkes then looked around the side of the police car where defendant had been and saw a clear plastic bag laying on the ground. He picked it up. It contained six smaller plastic bags, each made from a corner of a larger plastic bag. Each smaller bag contained an amber-colored rock-like substance which looked like crack cocaine. Barkes told defendant he was being arrested for possession of cocaine. Defendant became belligerent and started yelling and screaming "you didn't find this crack cocaine, you didn't find the drugs on me." Defendant also stated Barkes was trying to frame him.

When defendant was brought to the jail and his personal items inventoried, he was found in possession of $427 in cash. A $100 bill was found in his shirt pocket, a $5 bill and two $1 bills were found in his pants pocket, and three $100 bills and a $20 bill were found inside his right sock.

Barkes has been trained in undercover narcotics investigation and worked as an undercover drug buyer for three years. In his experience, when a large crack cocaine rock is broken up into smaller rocks for sale, it is packaged by placing a small rock in each corner of a plastic bag and then tying that corner off and cutting it from the larger bag. In his experience, crack cocaine packaged in the amount and method as in the case at hand was *always* packaged for distribution and never for personal consumption. An individual rock would be sold for between $20 to $50, and a bag containing roughly 12 rocks

would be sold for about $300. Also in his experience, a typical user would possess only one or two rocks packaged together at any one time.

Barkes did not see defendant holding the bag, nor did he see defendant throw the plastic bag. There were no lights shining on the passenger side of the car, and he did not see that area of the street before he found the bag. He also admitted six rocks of crack cocaine costing a total of $150 could be used by an individual within a day or a week, but it would be a rare situation. This amount of crack cocaine would be an "exorbitant" amount for an individual to use within one day. Further, the area where defendant was arrested is a high crime area.

Denise Vaughn, a forensic scientist specializing in drug chemistry and employed by the Illinois State Police Bureau of Forensic Science, tested the substance found by Barkes. The off-white rocks contained a total of .9 grams of a substance testing positive for cocaine.

Mary Esther Shadowens, the passenger riding in the car driven by defendant when he was arrested, was accompanying defendant as a favor for a friend who was concerned about defendant borrowing her car. Shadowens' friend told her defendant wanted to go to the store. The route defendant was driving was not a route to any store. After the police car flashed its overhead lights, defendant tried to hand Shadowens a plastic bag. She could not see if anything was inside the bag, but she refused to take it, telling him she would not take it because she did not want to go to prison. She assumed defendant then put the plastic bag in his pocket because she heard the plastic make a crinkling sound and she did not see a plastic bag anywhere else in the car.

Testifying in defendant's behalf, Denise Klaus was the representative payee of defendant's disability payments from the Social Security Administration (SSA). He receives the payments because of a learning disability. Klaus' duty is to help defendant manage his money. Defendant received a $2,652 lump-sum payment on April 12 of that year. She presented a copy of the SSA check to verify her testimony. She opened an account for defendant with the check and then withdrew $2,650 from the account so defendant could buy a car. She called a phone number defendant showed her on the side of a car parked in town and arranged for defendant to speak with the owner. She could not remember the owner's name, his phone number, or where he lived. She dropped defendant off on a street corner where he was supposed to meet with the car's owner. Defendant had the $2,650 in cash with which to buy the car as well as obtain car insurance. Klaus did not hear from defendant until several days later. To

her knowledge, defendant never bought the car, and she has no idea what happened to the money.

The jury found defendant guilty on both possession and possession with intent to deliver. The trial court entered a conviction only on the count regarding possession with intent to deliver because possession was an included offense of possession with intent to deliver. In September 1994, the trial court sentenced defendant to six years' imprisonment. Defendant now appeals, challenging the sufficiency of the evidence.

## II. ANALYSIS

■ Defendant first argues the evidence is insufficient to prove he possessed the cocaine. This argument is without merit. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985). When presented with a challenge to the sufficiency of the evidence, a reviewing court will sustain a criminal conviction if, " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).

To achieve a successful prosecution for possession of a controlled substance, the State need not demonstrate actual possession by the defendant if constructive possession can be inferred from the facts. *People v. Luckett*, 273 Ill. App. 3d 1023, 1033, 652 N.E.2d 1342, 1349 (1995). To support a finding of constructive possession, the State must prove the contraband was in defendant's immediate and exclusive control and the defendant knew the contraband was present. Knowledge may be proved by evidence of defendant's acts, declarations, or conduct from which it can be inferred he knew the contraband existed in the place where it was found. The elements of possession and knowledge are rarely susceptible of direct proof and these are questions for the trier of fact. The evidence at trial must be viewed in a light most favorable to the prosecution and the reviewing court should not substitute its judgment for the jury's when the evidence is conflicting. *People v. Feazell*, 248 Ill. App. 3d 538, 545, 618 N.E.2d 571, 576 (1993).

Defendant cites numerous cases in support of his proposition the evidence here was insufficient to prove possession. We need not, however, distinguish each of these cases factually. Here, when the evidence is viewed in the light most favorable to the State, the evi-

dence was sufficient for a rational trier of fact to conclude defendant was in possession of the plastic bag containing cocaine. When Officer Barkes pulled over defendant's car, defendant attempted to hand a plastic bag to Shadowens, the passenger. Shadowens refused to take the bag, and defendant kept the bag. Shadowens did not see any plastic bag in the car itself. When defendant exited the car, Officer Barkes repeatedly ordered him to stand still. Defendant refused and shuffled back and forth from side to side with his hands behind his back as if to keep his hands hidden from Officer Barkes' view. Defendant then walked, in direct disobedience to Officer Barkes' commands, to the right-hand side of Officer Barkes' car where his actions were partially obscured from Officer Barkes' view by the police car and darkness. Officer Barkes went to the right-hand side of his police car to catch defendant and handcuff him. Officer Barkes then found the bag containing cocaine lying on the ground in the exact location where defendant had just been standing. No other person had been seen at this location.

From this evidence, the jury was entitled to infer the plastic bag seen by Shadowens was the plastic bag found at the side of Officer Barkes' police car, and defendant's highly unusual and suspicious behavior was an attempt to conceal and then dispose of the bag containing cocaine before Officer Barkes found it in defendant's possession.

■ Defendant next asserts the evidence is insufficient to sustain his conviction for possession with intent to deliver. Intent to deliver is often proved by circumstantial evidence. This issue involves the examination of the nature and quantity of circumstantial evidence necessary to support an inference of intent to deliver. In controlled substances prosecutions, many different factors are probative of intent to deliver. Such factors include whether the quantity of controlled substance in defendant's possession is too large to be viewed as being for personal consumption, the high purity of the drug confiscated, the possession of weapons, the possession of large amounts of cash, the possession of police scanners, beepers or cellular telephones, the possession of drug paraphernalia, and the manner in which the substance is packaged. *People v. Robinson*, 167 Ill. 2d 397, 408, 657 N.E.2d 1020, 1026-27 (1995). The quantity of controlled substance alone can be sufficient to prove an intent to deliver. This is the case only where the amount of controlled substance could not reasonably be viewed as designed for personal consumption. When the amount of substance seized is an amount that may be considered consistent with personal use, additional evidence of intent to deliver is required to support a conviction. The question of whether the evidence is suf-

ficient to prove intent to deliver must be determined on a case-by-case basis. *Robinson*, 167 Ill. 2d at 412-13, 657 N.E.2d at 1028-29.

Defendant relies on several cases in support of his proposition the evidence here is insufficient to sustain his conviction for possession with intent to deliver. In *People v. Crenshaw*, 202 Ill. App. 3d 432, 436, 559 N.E.2d 1051, 1053 (1990), the First District Appellate Court reversed the defendant's conviction for possession with intent to deliver. The court concluded the fact defendant possessed a total of 11.2 grams of cocaine divided into 22 small packets was not sufficient in itself to establish an intent to deliver. Although the defendant was carrying cash, the court declared "[t]he currency in defendant's possession was of no significance because the amount was never determined." *Crenshaw*, 202 Ill. App. 3d at 436, 559 N.E.2d at 1054. In *People v. Thomas*, 261 Ill. App. 3d 366, 371, 633 N.E.2d 839, 842 (1994), the First District Appellate Court reversed the defendant's conviction for possession with intent to deliver. The court declared the fact the defendant was found in possession of 27 individual packets totalling 5.5 grams of cocaine and had a loaded shotgun lying nearby was not sufficient evidence to establish an intent to deliver. In *People v. McLemore*, 203 Ill. App. 3d 1052, 561 N.E.2d 465 (1990), the Fifth District Appellate Court reversed the defendant's conviction for possession with intent to deliver. The court declared the fact the defendant was found in possession of 15 individual packages totalling 3.3 grams of cocaine and four or five $100 bills was not sufficient evidence to establish an intent to deliver.

These cases would appear to offer support for defendant's position. The evidence here—a small amount of drugs packaged for individual sale and a large amount of cash—is similar to the evidence in these cases, especially *Crenshaw* and *McLemore*. However, we believe the holdings of these cases have been called into serious question, and perhaps repudiated, by our supreme court.

In *Robinson*, a defendant challenged the sufficiency of the evidence to sustain his conviction for possession with intent to deliver. The court first cited numerous cases, including *Crenshaw*, *Thomas*, and *McLemore*, which had considered whether the circumstantial evidence was sufficient to establish an intent to deliver. The court then immediately declared "[w]e note that in each of the cases cited above, *there was greater circumstantial evidence of intent to deliver than in the present case.*" (Emphasis added.) *Robinson*, 167 Ill. 2d at 412, 657 N.E.2d at 1029. The court then *upheld* the defendant's conviction, declaring there was sufficient circumstantial evidence to sustain his conviction:

"The record reveals that the cocaine recovered in this case was

contained in 36 individual packets and the PCP was contained in four packets along with four empty plastic bags. \*\*\* [T]he police had received several anonymous phone calls complaining of drug sales at the apartment building at 107 North Menard. \*\*\* [A]pproximately a dozen people came 'in and out of the doorway at 107 North Menard' over a 20-minute time period.

 \*\*\*

 \*\*\* Considering the fashion in which the controlled substances possessed by the defendant were packaged, the anonymous tips, and amount of late-night traffic at 107 North Menard, the appellate court erroneously reversed the defendant's conviction for possession with intent to deliver. Forty individual parcels, containing two different types of narcotics, and the other circumstantial evidence in this case were sufficient to support the jury's verdict." *Robinson*, 167 Ill. 2d at 413-14, 657 N.E.2d at 1029.

Here, there is as much circumstantial evidence of an intent to deliver as there was in *Crenshaw* and *McLemore*: drugs packaged in multiple individual doses, a large *determined* amount of cash, and expert testimony the drugs were packaged for sale. The amount of drugs in *Crenshaw* and *McLemore* was greater than the amount here, but the amount here was still greater than that ordinarily possessed for personal use. We believe our supreme court would consider the circumstantial evidence here equal to or greater than the evidence available in *Robinson* and would similarly affirm defendant's conviction.

*Robinson* suggested there was sufficient evidence to sustain a conviction in *Crenshaw* and *McLemore*. *Robinson* by implication called into serious question other Illinois cases with holdings similar to *Crenshaw* and *McLemore*, but which *Robinson* did not cite. One such case is *People v. Hodge*, 250 Ill. App. 3d 736, 620 N.E.2d 651 (1993), also relied on by defendant here. In *Hodge*, the defendant appealed his conviction for possession with intent to deliver. The defendant was found in possession of 4.07 grams of crack cocaine, which the State established was four to five weeks' worth of the drug for an individual user. The defendant also possessed $900 in cash, $820 of which was in $20 bills, as well as a handgun. The Fifth District Appellate Court reversed his conviction, noting the drugs were not packaged for individual sale, the defendant did not possess drug paraphernalia associated with dealers, and defendant asserted the cash came from his employment wages. Given the evidence in *Hodge* was greater than that in *Crenshaw* and *McLemore*, which cases our supreme court repudiated in *Robinson*, we believe *Robinson* implicitly rejected the holding of *Hodge* as well. In short, *Hodge* does not support defendant's position.

Further, to affirm defendant's conviction here is not only consistent with *Robinson*, but is consistent with another Illinois case as well, *People v. Delgado*, 256 Ill. App. 3d 119, 123, 628 N.E.2d 727, 730 (1993). In *Delgado*, the defendant was convicted of possession with intent to deliver after being caught with 15 clear, small plastic baggies containing a total of 3.0 grams of cocaine, and 11 small plastic baggies and three tinfoil packets containing a total of 5.6 grams of heroin. The defendant appealed his conviction, and the First District Appellate Court reversed, declaring:

> "The minimum this court has required for the affirmance of a conviction for delivery involving small amounts of drugs is possession of the controlled substance packaged for sale, plus at least one additional factor indicative of delivery, *e.g.*, a significant amount of cash recovered from the defendant." *Delgado*, 256 Ill. App. 3d at 123, 628 N.E.2d at 730.

The court declared possession of a relatively small amount of drugs, in and of itself, does not establish intent to deliver beyond a reasonable doubt, so the defendant's conviction was reversed. Here, defendant not only possessed cocaine packaged for sale, but there was an additional factor indicative of an intent to deliver: defendant possessed a large amount of cash. This evidence meets what *Delgado* declared is the minimum floor of evidence necessary to establish an intent to deliver: drugs packaged for sale and any *one* additional factor tending to show intent to deliver. This also is consistent with the holding in *Robinson* that when the amount of drugs can reasonably be viewed as being for personal consumption, additional circumstantial evidence of an intent to deliver is required.

Here, defendant was found in possession of six rocks of crack cocaine totalling .9 grams, and which were individually packaged using the corners of plastic bags. Officer Barkes, the arresting officer with expertise in the field of undercover narcotics investigations, testified this amount would be an "exorbitant" amount to be used by a single person in one day. He also testified this amount could possibly be used in a week's time by an individual consumer, but such a case would be rare. Officer Barkes further testified the packaging was a commonly used method of packaging crack cocaine for sale. In his experience, in every instance where crack cocaine was packaged in the amount and method here, the cocaine was packaged for distribution, not for personal consumption. No drug paraphernalia associated with the personal use of cocaine were found.

In addition, $427 in cash was found in three locations on defendant's person, including $100 bills in two different locations. Although defendant's representative payee Klaus testified she gave de-

fendant $2,650 in cash several days before his arrest, she admitted she had no idea what defendant had done with the money. The jury may have decided Klaus was not a credible witness and discounted her explanation, since the actions she testified she took would be contradictory to her duties as a representative payee to ensure defendant properly managed his money. In short, viewing all of the evidence in a light most favorable to the State, the evidence was sufficient for the jury to find defendant guilty beyond a reasonable doubt of possession with intent to deliver.

Affirmed.

McCULLOUGH and GARMAN, JJ., concur.