THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERRY S. MINNIWEATHER, Defendant-Appellant.

Fourth District    No. 4—97—0691

Opinion filed November 25, 1998.

575

GARMAN, P.J., specially concurring.

Daniel D. Yuhas and Janieen R. Tarrance, both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Following a jury trial, defendant was convicted of possession of a controlled substance with intent to deliver, a Class X felony. 720 ILCS 570/407(b)(1) (West 1996). Defendant was sentenced to 10 years' imprisonment and was ordered to reimburse Champaign County for public defender fees pursuant to section 113—3.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113—3.1 (West 1996)). Defendant appeals, challenging the sufficiency of the evidence to sustain his conviction and imposition of the recoupment order without a hearing to determine his ability to pay. We affirm in part, vacate in part, and remand with directions.

According to the testimony of the State's witnesses, police officers Jim Rein and Mark Strzesak were on patrol in a semi-marked squad car in Champaign, Illinois, on an evening in March 1997. The officers observed a black male, whom they later identified as the defendant, walk up to a parked car and make an exchange through the passenger side window. Suspecting they had observed a drug sale, the officers approached the suspect and asked to speak with him. As they approached, the suspect fled. Rein pursued the suspect and radioed for assistance while Strzesak stayed with the squad car. Over the radio, Rein described the suspect as wearing a black and yellow starter jacket.

Officers John Murphy and Scott Swan were already patrolling in the area and responded to Rein's call. They were just a few blocks south of the start of the chase when Murphy spotted the suspect crouching along the side of the house at 1112 West Eureka. Swan gave chase but lost sight of the suspect and met up with Rein. The officers quickly determined that the suspect was boxed in and began to search the immediate area. Within minutes Swan saw the suspect beneath a patio table outside 1112 West Eureka. The suspect had arranged a lawn mower and miscellaneous patio furniture around the table in an effort to conceal himself. Officers Swan and Murphy ordered the suspect to come out from beneath the table and show his hands. The suspect did not obey the officers' repeated orders and eventually the officers removed the barricade and pulled the suspect out from under the table. The suspect was placed under arrest and taken to a squad car.

When the officers examined the area they discovered a large plastic bag that contained 26 smaller baggies of rock cocaine, 9 individual

baggies of rock cocaine, and $222 in cash. These items were found five to six feet from where the suspect had been hiding under the table. It was also discovered upon arrest that the suspect's jacket was blue, red and white; a Chicago Cubs jacket. Officer Rein testified that he first saw the suspect under an amber-tinted streetlight.

■ Defendant initially contends that the State failed to prove he was in possession of the cocaine beyond a reasonable doubt. The standard for reviewing the sufficiency of the evidence in a criminal case is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 169 Ill. 2d 132, 152, 661 N.E.2d 287, 296 (1996); *Jackson v. Virginia*, 443 U.S. 307, 313, 61 L. Ed. 2d 560, 569, 99 S. Ct. 2781, 2785 (1979) (rejecting test whether there was any evidence to support the conviction). The fact finder's verdict will not be overturned unless its verdict is so unreasonable, improbable, and unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. *Brown*, 169 Ill. 2d at 152, 661 N.E.2d at 296. Sometimes appellate courts mention only the first statement from *Brown* and emphasize the word "any." The implication is that if one person in a hundred could have seen the facts the way the trial court did, we cannot interfere, although we strongly disagree with the finding. The implication is that this court should never review a finding of fact. Those implications are not accurate. While a jury's determination of guilt is entitled to great deference, and while we will not retry the defendant when the sufficiency of the evidence is challenged, " 'it is [still] our duty to set aside a conviction when the evidence raises a reasonable doubt of defendant's guilt.' " *People v. Schott*, 145 Ill. 2d 188, 206, 582 N.E.2d 690, 699 (1991), quoting *People v. Boclair*, 129 Ill. 2d 458, 474, 544 N.E.2d 715, 722 (1989).

■ Even in civil cases a court may reverse a jury verdict if it is against the manifest weight of the evidence, that is, when an opposite conclusion is apparent, or when the findings appear to be unreasonable, arbitrary or not based upon the evidence. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 242, 665 N.E.2d 1260, 1274 (1996). *Jackson* held that the standard in civil cases is not sufficient protection for defendants in criminal cases, because the civil cases did not take the requirement of proof beyond a reasonable doubt into account. *Jackson*, 443 U.S. at 318 n.11, 61 L. Ed. 2d at 573 n.11, 99 S. Ct. at 2789 n.11; see also 11 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2806, at 65-67 (2d ed. 1995) (federal standard a lesser standard than Illinois manifest weight standard). The question for the court to decide, under *Jackson*, is whether, on the evidence, the jury would have to have a reasonable doubt. See 2 C. Wright, Federal

Practice & Procedure § 467 (2d ed. 1982). This question, like the question whether there is any evidence at all to support a proposition, is a question of law for the court. See F. James & G. Hazard, Civil Procedure § 7.11 (3d ed. 1985); *Jackson*, 443 U.S. at 321, 61 L. Ed. 2d at 575, 99 S. Ct. at 2790 ("courts can and regularly do gauge the sufficiency of the evidence without intruding into any legitimate domain of the trier of fact").

We do not do our duty if we refuse to consider whether the evidence is sufficient to sustain a verdict. A mere recital of the standard of review is not an adequate resolution of a challenge to the sufficiency of the evidence.

■ ■ To sustain a conviction for possession of a controlled substance with intent to deliver, the State must prove that (1) the defendant had knowledge of the presence of the controlled substance, (2) the controlled substance was in the immediate control or possession of the defendant, and (3) the defendant intended to deliver the controlled substance. *People v. Robinson*, 167 Ill. 2d 397, 407, 657 N.E.2d 1020, 1026 (1995). In a prosecution for possession of a controlled substance the State need not prove actual possession when constructive possession can be inferred from the facts. *People v. Beverly*, 278 Ill. App. 3d 794, 798, 663 N.E.2d 1061, 1064 (1996).

> "Constructive possession may exist even where an individual is no longer in physical control of the drugs, provided that he once had physical control of the drugs with intent to exercise control in his own behalf, and he has not abandoned them and no other person has obtained possession." *People v. Adams*, 161 Ill. 2d 333, 345, 641 N.E.2d 514, 519-20 (1994).

■ Defendant argues the State introduced "no evidence" that he at any time had possession of the drugs that were found at the scene of his arrest. That assertion rests on the erroneous premise that control of the premises is an absolute requirement for constructive possession and that, without it, all other circumstantial evidence can be disregarded. Control of the premises is not required for a finding of constructive possession. *Adams*, 161 Ill. 2d at 345, 641 N.E.2d at 519. While it is well settled that "where narcotics are found on premises under defendant's control, it may be inferred that the defendant had both knowledge and control of the narcotics" (*People v. Nettles*, 23 Ill. 2d 306, 308, 178 N.E.2d 361, 363 (1961)), the inverse inference does not follow. Where narcotics are found on premises that are *not* under the defendant's control, defendant's control of the premises is not dispositive. Rather, it is defendant's relationship *to the contraband* that must be examined.

Defendant supports his argument with three "premises cases"

that are factually distinguishable from the case at bar. *In re K.A.*, 291 Ill. App. 3d 1, 682 N.E.2d 1233 (1997) (defendant arrested fleeing a known "drug house"); *People v. Adams*, 242 Ill. App. 3d 830, 610 N.E.2d 763 (1993) (defendant discovered in a bathroom in an apartment leased to another); *People v. Ray*, 232 Ill. App. 3d 459, 597 N.E.2d 756 (1992) (defendants discovered in living room of apartment rented by others). Although not cited by the parties, this case is more closely analogous to *Adams*, 161 Ill. 2d 333, 641 N.E.2d 514, and *Beverly*, 278 Ill. App. 3d 794, 663 N.E.2d 1061.

In *Adams*, the court upheld a conviction based on constructive possession when the controlled substance was found in an airplane rest room. *Adams*, 161 Ill. 2d 333, 641 N.E.2d 514. The defendants were noticed entering the rest room prior to takeoff and immediately following each other. A flight attendant who had noted the defendants' behavior discovered the drugs in the rest room after takeoff. Upon landing, the police boarded the plane, confiscated the drugs, and made the arrest that resulted in conviction for possession.

On appeal it was argued there was no constructive possession because the defendants had no control over the rest room. *Adams*, 161 Ill. 2d at 344, 641 N.E.2d at 519. The court held control of the rest room was not dispositive when circumstantial evidence indicated the defendants had intended to exercise control over the substance. *Adams*, 161 Ill. 2d at 345, 641 N.E.2d at 520. It was further held that hiding or disposing of the contraband to avoid detection does not constitute abandonment. *Adams*, 161 Ill. 2d at 345, 641 N.E.2d at 520. Notably, nobody witnessed the defendants in actual possession of the drugs or disposing of the drugs; nor were the drugs found within reach of the defendants upon arrest. The rest room was not only out of the defendants' control, but was used by other passengers throughout the flight. Nevertheless, the conviction was upheld. See also *People v. Pittman*, 216 Ill. App. 3d 598, 603, 575 N.E.2d 967, 970 (1991) (mere access by other persons to the area where drugs are found is insufficient to defeat a charge of constructive possession).

Similarly, in *Beverly*, circumstantial evidence resulted in conviction of a defendant who dropped his contraband on the side of the road while the arresting officer's attention was diverted. *Beverly*, 278 Ill. App. 3d 794, 663 N.E.2d 1061. The officer had pulled defendant over for moving violations and never saw the defendant in possession of a plastic bag of rock cocaine. However, the defendant's "highly unusual and suspicious" behavior during the stop led the officer to examine the area where defendant had been pacing. There he discovered the bag of cocaine. This court held that the circumstantial evidence was sufficient to support a finding of constructive possession. *Beverly*,

278 Ill. App. 3d at 799, 663 N.E.2d at 1065. As in this case, the drugs were found in an area that was not in defendant's control. Also, as in this case, the drugs were found where the defendant had been, but were not within defendant's reach at the moment they were discovered. Nevertheless, the circumstantial evidence supporting an inference of possession was sufficient to sustain a finding of possession.

■ As in the cases above, although the defendant in this case was not seen in possession of the cocaine, the circumstantial evidence supporting a finding of possession is strong. The evidence implicating defendant includes the following: the defendant fled from police; the defendant was only out of sight for a brief period of time; no one else was seen in the area; the defendant hid from police; the defendant failed to obey police orders to show his hands and come forward; the drugs were discovered within five to six feet of the defendant's hiding place; and there was no evidence the patio at 1112 West Eureka was a "drug house." We find that from this evidence a reasonable trier of fact could draw the inference that the defendant had intended to exercise control over the cocaine and, thus, it was in his possession.

This court has previously noted that the "evidence establishing constructive possession is often wholly circumstantial." *People v. Newman*, 211 Ill. App. 3d 1087, 1093, 569 N.E.2d 1089, 1093 (1991). The jury must weigh those facts that tend to support the inference that defendant controlled the substance against those facts that demonstrate lack of control. *Newman*, 211 Ill. App. 3d at 1093, 569 N.E.2d at 1093.

Defendant contends the jury actually held a reasonable doubt, despite its delivery of a guilty verdict, as evidenced by its request to review evidence and questions posed to the court during deliberations. The defendant's argument is without merit. That the jury asked for guidance during deliberations merely indicates that the jury took its job seriously and conscientiously worked to come to a just decision.

■ Defendant next contends the court erred in failing to hold a hearing to assess his ability to pay the reimbursement prior to the services being rendered under section 113—3.1 of the Code. In *People v. Love*, 177 Ill. 2d 550, 563, 687 N.E.2d 32, 38 (1997), the Supreme Court of Illinois held that trial courts are required to conduct hearings into defendants' financial resources as a precondition to ordering reimbursement. In this case, no hearing was held. The State concedes under the precedent of *Love* that the reimbursement order must be vacated and the cause remanded for compliance with the requirements of *Love*.

Accordingly, that portion of the judgment ordering reimbursement

for attorney fees is vacated, and the cause is remanded. Defendant's conviction is otherwise affirmed.

Affirmed in part and vacated in part; cause remanded with directions.

GREEN, J., concurs.

PRESIDING JUSTICE GARMAN, specially concurs:
While I concur in the result of this case, I write to express my concern about the majority discussion of the standard of review. I am fearful that practitioners will read this opinion and conclude that we are altering the standard of review on the sufficiency of the evidence. We are not.

The requisite test when the sufficiency of the evidence is challenged is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The verdict must not be so unreasonable, improbable, or unsatisfactory that it leaves a reasonable doubt as to the defendant's guilt. This means that the function of a reviewing court is to carefully examine the process by which the fact finder reasoned from the evidence to the ultimate finding. If there is sufficient factual support in the record upon which the fact finder could have based an inference of guilt, the process is rational and it is not within our province to set aside the verdict because we might have reached a different result. Upon carefully examining the evidence in the present case, we have concluded that the fact finder could reasonably have found the defendant guilty.