THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMIE McCARTER, Defendant-Appellant.

First District (6th Division)   No. 1—01—2936

Opinion filed June 13, 2003.

Michael J. Pelletier and Jennifer Bonjean, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Peter Maltese, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GALLAGHER delivered the opinion of the court:

Following a bench trial, defendant Jamie McCarter was convicted of three counts of unlawful use of a weapon by a felon and sentenced to concurrent four-year prison terms. On appeal, defendant contends that the State failed to prove beyond a reasonable doubt that he had constructive possession of the weapons. Defendant also contends that two of his convictions must be vacated under the one-act, one-crime doctrine.

The testimony of Officer John Sullivan, Investigator Robert Vaughn, and Investigator David Ritkowski established that about 8

p.m. on June 27, 2000, the officers went to 900 East 14th Street in Ford Heights pursuant to an outstanding warrant for defendant. Officer Sullivan "knew that was his address from previous encounters" and it was the "address he has given other times." When defendant's mother answered the door, the officers asked if defendant was home and for consent to search the residence. Defendant's mother said defendant "was there earlier in the day, but he wasn't home now." She told the officers they could "come in and take a look." Defendant's stepfather returned home and signed a consent to search the house.

In the corner of one bedroom next to the dresser, the officers recovered a loaded A-K 47 assault rifle wrapped in a blanket. The officers recovered a 9-millimeter handgun loaded with 15 rounds from the top of the dresser. In the top dresser drawer they found numerous rounds of ammunition. In the same dresser drawer, they recovered as proof of residency two pieces of mail addressed to defendant at 900 East 14th Street. One was postmarked November 2, 1999, and the other, a postcard from the court, was postmarked June 23, 2000. In addition, the officers found four photographs of defendant in the dresser drawer and some T-shirts and shorts. In a closet, the officers found an extended magazine for a .45-caliber semiautomatic pistol.

The parties stipulated that defendant had a prior conviction for delivery of a controlled substance and that the weapons were analyzed for fingerprints, yielding one latent print with no match for known fingerprints. However, defendant's fingerprint card was never submitted for specific identification to the latent print.

Defense counsel argued in closing that at the very most the State had shown that defendant "lived there" but not that "for sure he lived there at this time," that defendant was not present when the house was searched, and that other people had access to the house. The trial court found defendant guilty on all three charges.

At sentencing, the State presented evidence that defendant was on parole at the time of this offense and he had a previous Class 2 felony conviction for delivery of a controlled substance within two years. See 720 ILCS 5/24—1.1(e) (West 2000) (classifying the offense as Class 2 with a sentence of 3 to 14 years). The State also presented evidence of defendant's two findings of delinquency in 1996 and 1997 and defendant's guilty plea to possession of a controlled substance in 1998. The court sentenced defendant to "four years" in prison. The mittimus shows three concurrent four-year sentences.

On appeal, defendant first contends that the State failed to prove beyond a reasonable doubt that he constructively possessed the weapons recovered from a bedroom in his parents' home where "the only evidence" connecting him to the weapons was the officer's

testimony that he found two letters addressed to defendant and photographs of defendant in a dresser drawer.

■ To sustain defendant's convictions, the State had to prove that defendant had knowing possession of the weapons and that he had a prior felony conviction. 720 ILCS 5/24—1.1 (West 2000); *People v. Brown*, 327 Ill. App. 3d 816, 824 (2002). When a defendant is not found in actual possession, the State must prove constructive possession, *i.e.*, that defendant had knowledge of the presence of the weapon and exercised immediate and exclusive control over the area where the weapon was found. *Brown*, 327 Ill. App. 3d at 824.

■ Control over the location where the weapons were found gives rise to an inference that defendant possessed the weapons. *People v. Hammer*, 228 Ill. App. 3d 318, 323 (1992). Evidence of constructive possession is "often entirely circumstantial." *People v. McLaurin*, 331 Ill. App. 3d 498, 502 (2002). The trier of fact is entitled to rely on an inference of knowledge and possession sufficient to sustain a conviction absent other factors that might create a reasonable doubt as to the defendant's guilt. *People v. Smith*, 191 Ill. 2d 408, 413 (2000).

■ In the bedroom where the officers found one gun on top of the dresser and the A-K 47 assault rife next to it, and in the same dresser drawer where they found the ammunition, they found photographs of defendant and two pieces of mail addressed to defendant. One mailing was from the court and was postmarked only four days before defendant's arrest. In addition, Officer Sullivan testified that he knew defendant lived at the address both from previous encounters and defendant's own assertion at other times.[1] Furthermore, when the officers asked defendant's mother if defendant was home, she replied that he had been there earlier that day but was not there at the time.

Contrary to defendant's assertion, this uncontradicted evidence, together with the reasonable inferences flowing from it and viewed in the light most favorable to the prosecution, was sufficient to establish his constructive possession of the contraband. See *People v. Adams*, 161 Ill. 2d 333, 345 (1994) (finding adequate basis for trier of fact to conclude defendants maintained constructive possession); accord *People v. Minniweather*, 301 Ill. App. 3d 574, 578-80 (1998) (although defendant was not seen in possession of the contraband, strong circumstantial evidence supported finding of constructive possession); *People v. Hill*, 226 Ill. App. 3d 670, 672-73 (1992) (another's access to the bedroom and contents of an armoire did not defeat the defendant's

---

[1]The State notes that the presentence investigation report shows defendant gave only this address as his residence. The defense notes that the report states "(former)" next to the address.

constructive possession of weapon found there); *People v. Elam*, 197 Ill. App. 3d 8, 11-13 (1990) (upholding finding of constructive possession where there was conflicting evidence of residency); *People v. Williams*, 98 Ill. App. 3d 844, 846-49 (1981) (upholding finding of constructive possession where the defendant was not present at the time of contraband's seizure, had no legal interest in the apartment and "may not have been more than a squatter," and others shared the apartment and had access to the contraband). The cases on which defendant relies are factually distinguishable. See, *e.g.*, *People v. Macias*, 299 Ill. App. 3d 480 (1998) (the defendant testified he had no knowledge of the contraband and had not been in the apartment, and his testimony explaining his innocent possession of keys, given to him by the hospitalized resident of the apartment, was corroborated); *People v. Ray*, 232 Ill. App. 3d 459 (1992) ("no evidence" presented linking three defendants to premises except a six-month-old cable television bill in one of the defendants' names).

Defendant also contends that two of his convictions must be vacated under the one-act, one-crime rule. Defendant relies on *People v. Manning*, 71 Ill. 2d 132 (1978), and its progeny holding a simultaneous possession of two controlled substances constitutes a single offense. See *People v. Clemons*, 275 Ill. App. 3d 1117, 1118-19 (1995 (also discussing legislative amendment overruling *Manning* and its progeny). Defendant asserts that the same logic must be applied to the simultaneous possession of more than one firearm, which should constitute a single act of unlawful use of a weapon by a felon.

The State asserts correctly that defendant has failed to cite a single case in which the ruling in *Manning* has been applied to multiple violations of section 24—1.1. Notably, the current version of the applicable controlled substance statute authorizes multiple convictions for offenses involving multiple types of controlled substances. 720 ILCS 570/402 (West 2000); *People v. Ortiz*, 313 Ill. App. 3d 896, 901-02 (2000). The State further asserts that weapons are inherently different from controlled substances, which are statutorily prohibited in terms of volume, *i.e.*, grams not number of packets, and that it would have dire implications to impose the same liability on a defendant found in possession of one switchblade knife as on a defendant found in possession of an entire arsenal of weapons.

■ The one-act, one-crime rule prevents multiple convictions when more than one offense is carved from the same physical act or where one offense is a lesser-included offense of another. *People v. Lindsey*, 324 Ill. App. 3d 193, 200 (2001). An "act" has been defined as " 'any overt or outward manifestation which will support a different offense.' " *People v. Rodriguez*, 169 Ill. 2d 183, 188 (1996), quoting *People v. King*, 66 Ill. 2d 551, 566 (1977).

In *People v. Crespo*, 203 Ill. 2d 335 (2001), the supreme court reaffirmed the "valid proposition of law" announced in *People v. Dixon*, 91 Ill. 2d 346 (1982) (each separate blow of a mop handle could support a separate conviction), so long as the indictment indicates that the State intends to treat the defendant's conduct as separate acts. See *Crespo*, 203 Ill. 2d at 345. In *Crespo*, the defendant stabbed the victim three times, but the State did not differentiate between the acts in the charging instrument and argued for the first time on appeal that each stab was a separate act. *Crespo*, 203 Ill. 2d at 342-44. The court noted that each stab *"could have"* supported a separate charge and the State *"could have* argued the case to the jury that way" but chose not to do so. (Emphasis in original.) *Crespo*, 203 Ill. 2d at 344. But the court found that to apportion the crimes among the three stabs for the first time on appeal would be unfair and concluded that multiple convictions could not be sustained. *Crespo*, 203 Ill. 2d at 343, 345.

■ "Possessory offenses, like those at issue here, have always posed a special problem" when determining whether there was only "one act." *Lindsey*, 324 Ill. App. 3d at 204 (Cook, J., specially concurring in part and dissenting in part). Problems applying the one-act, one-crime rule are evident in possession cases. Compare *People v. Williams*, 302 Ill. App. 3d 975, 978 (1999) (holding simultaneous possession of gun and drugs was single act that could not support charges of both armed violence and unlawful possession of a weapon by a felon), with *People v. White*, 311 Ill. App. 3d 374, 385 (2000) (finding *Williams* was wrongly decided and holding "though simultaneous, defendant's possession of the gun was an act distinct from defendant's possession of the drugs"), citing *People v. Green*, 199 Ill. App. 3d 927, 932 (1990) (possession of drugs in right pocket was separate act from possession of drugs in left pocket, and each could support a conviction for a separate offense). The *Lindsey* court concluded that it "remains to be seen under what circumstances, if any, the State may charge as separate 'acts' the various physical components of purely possessory offenses." *Lindsey*, 324 Ill. App. 3d at 205 (Cook, J., specially concurring in part and dissenting in part).

■ In the present case, the State did charge defendant with three separate counts based on his possession of three different types of contraband: a rifle, a handgun, and ammunition. Thus, we are not presented with the issue the *Crespo* court confronted. Moreover, section 24—1.1 proscribes a felon's possession of *"any* firearm, in *any* situation." (Emphasis in original.) *People v. Gonzalez*, 151 Ill. 2d 79, 87 (1992); see also *People v. Crawford*, 145 Ill. App. 3d 318, 321 (1986) (section 24—1.1 was enacted "to protect the health and safety of the public by deterring possessions of weapons by convicted felons, a class

of persons that the legislature has determined presents a higher risk of danger to the public when in possession of *a weapon*" (emphasis added)). The danger to the public is obviously greater from several weapons rather than only one weapon.

Therefore, we conclude that, in this case, where the State brought separate charges, each of which would support a separate conviction, defendant's convictions on three counts of unlawful possession of a weapon by a felon, none of which was a lesser-included offense, were proper. See *People v. Olivieri*, 334 Ill. App. 3d 311, 314-18 (2002) (upholding multiple convictions where the charging instrument gave defendant sufficient notice that the State intended to treat each act as a separate offense); *People v. Pearson*, 331 Ill. App. 3d 312, 321-23 (2002) (rejecting the defendant's argument that his conduct constituted a single physical act that would support only one conviction); *White*, 311 Ill. App. 3d at 385-87 (affirming defendant's convictions for unlawful use of a weapon by a felon and armed violence); *People v. McCrimmon*, 150 Ill. App. 3d 112 (1986) (affirming the defendant's convictions for three counts of unlawful use of a weapon by a felon).

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.